WILLIAM H. KENNER and ELEANOR V. KENNER, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Kenner v. Commissioner
Docket Nos. 2761-62, 2762-62, 2763-62
United States Tax Court
T.C. Memo 1974-273; 1974 Tax Ct. Memo LEXIS 47; 33 T.C.M. (CCH) 1239; T.C.M. (RIA) 740273; October 21, 1974, Filed Charles A. Boyle and William M. Phelan, for the petitioners. Alan M. Jacobson, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: [2] Respondent determined income tax deficiencies and additions to tax in these consolidated cases as follows: Docket No. 2761-62
Additions to Tax I.R.C. 1954
Year
Deficiency
Sec. 6651(a)
Sec. 6654 1955
$ 59,786.06
1956
52,479.60
$ 22.55
1957
52,507.79
1958
57,507.62
$ 16,466.16
$ 178.24
Docket No. 2762-62
1955
$ 42,434.27
$ 10,608.57
1956
19,027.86
4,756.97
1957
22,765.93
5,691.48
1958
25,006.51
6,251.63
1959
63,959.63
15,989.91
Docket No. 2763-62
1959
$ 109,784.01
$ 144.50
On August 21, 1968, we filed our original opinion in these consolidated cases as T.C. Memo. 1968-185. Petitioners appealed from our decisions to the United States Court of Appeals for the Seventh Circuit. On June 17, 1971, the Court of Appeals reversed and remanded for a new trial. 445 F.2d 19. Pursuant *48 to the mandate of the appellate court, a new trial was held on January 17 through 19, 1973. Following the trial, the parties filed a new series of briefs and the Court heard their oral arguments. The following issues have been presented for our decision: (1) Whether or not any part of the net earnings of petitioner Kenner's Charitable Hospital, Inc., inured to the benefit of any private shareholder or individual during the years 1955 through 1959, thereby disqualifying it from exemption from taxation under section 501(c) (3); [3]
(2) If petitioner Kenner's Charitable Hospital, Inc., was not exempt from taxation during the years 1955 through 1959, what was the amount of its taxable income for those years; (3) If petitioner Kenner's Charitable Hospital, Inc., was not exempt from taxation during the years 1955 through 1959, whether or not it is liable for additions to the tax for failure to file tax returns for such years pursuant to section 6651(a); (4) Whether or not petitioner William H. Kenner realized taxable income from Kenner's Charitable *49 Hospital, Inc., by reason of payments which it made to him or on his behalf during the years 1955 through 1959; (5) Whether or not petitioner William H. Kenner is entitled to various deductions for the years 1955 through 1959; and (6) Whether or not petitioner William H. Kenner is liable for an addition to tax for the year 1958 pursuant to section 6651(a) for failure to timely file a Federal income tax return for that year. [4]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. [5] *50 Petitioner William H. Kenner (hereinafter referred to as Kenner) joined his wife Eleanor V. Kenner in filing Federal income tax returns for the years 1955 through 1958 and filed a separate income tax return for 1959 with the district director of internal revenue, Chicago, Illinois. The return for 1958 was not filed until October 27, 1959. Petitioner Kenner's Charitable Hospital, Inc. (hereinafter referred to as the Hospital or the Hospital corporation) had its principal office in Chicago, Illinois during the years 1955 through 1959. It did not file any Federal income tax returns for those years. Kenner is a physician who began the private practice of medicine at 716 Wellington Avenue in Chicago during 1930. In 1932 he purchased the premises located at that address. In 1933 the Hospital was organized and incorporated under the laws of the State of Illinois. Its articles of incorporation generally provided that its purpose was to provide free, charitable hospital rooms and treatment and not to operate for percuniary profit. The articles of incorporation were amended in 1949 to conform to the requirements of the Illinois General Not For Profit *51 Corporation Act. During all the years of the Hospital's existence, Kenner was in complete control of its affairs and served in various capacities such as president, director, administrator, and house physician. Kenner converted his Wellington Avenue property into a hospital and conveyed it to the Hospital corporation in 1936. In 1946 the Hospital sold the Wellington Avenue premises as a going concern for $60,000. On October 1, 1946, Kenner purchased the premises at 3150 Lake Shore Drive in Chicago for $155,000. At that time the property was improved with a residence and a garage. Kenner immediately began to convert the former into a hospital and the latter into a nurses' home. He conveyed the property to the Hospital corporation on March 12, 1947, and the corporation thereafter operated a hospital at that location until some time in 1959. On August 26, 1949, the Hospital filed an exemption affidavit, claiming exemption from Federal income tax under section 101(6) of the Internal Revenue Code of 1939. By letter dated October 10, 1949, the Bureau of Internal Revenue ruled that the Hospital was entitled to the exemption. By letter dated September 11, 1951, the exemption ruling *52 was revoked. On March 17, 1950, Kenner organized Altar Land and Cattle Company (hereinafter referred to as Altar) under the laws of Arizona with 886 shares of stock outstanding, of which Kenner owned 884 shares and two other individuals each held a single share as Kenner's nominees. In 1950 Altar acquired the land, buildings, and personal property known as the Lazy-V Ranch and located some 25 miles from Tucson, Arizona. In 1953 Kenner purchased 10.8 acres of land which was known as the Hill House property and adjoined the southeast edge of the Lazy-V Ranch. The Hill House property was conveyed to the Hospital corporation in March 1957. In the southeast corner of the Lazy-V Ranch, adjoining the Hill House property, were 10 acres known as the Rincon property. During the years 1950 through 1954, the Rincon property was improved by converting a garage into a coffee shop, adding several rooms to the servant's quarters, tearing down barns and outbuildings, and erecting a commissary. Kenner and the Hospital previously petitioned this Court in the case of William H. Kenner, T.C. Memo. 1961-37, affd. 318 F.2d 632 (C.A. 7, 1963). That case involved the Federal income tax liability *53 of Kenner and the Hospital for the years 1944 through 1954 and will sometimes be referred to herein as "the prior case." We held there that the Hospital did not qualify for tax exemption during the years 1944 through 1954 under sections 101(6) and 501(c) (3) of the Internal Revenue Codes of 1939 and 1954, respectively, because part of the Hospital's net earnings inured to the benefit of Kenner during each of those years by reason of the payments which the Hospital made to him or on his behalf. Among such payments were expenditures of the Hospital for improvements to the Rincon property during the years 1950 through 1954. In the prior case, we further held that the taxable income of the Hospital for each of the years at issue therein was as follows: 1944
$ 70,625.75
1945
70,625.75
1946
70,625.75
1947
70,625.76
1948
58,255.91
1949
58,442.53
1950
76,141.91
1951
96,687.47
1952
68,925.19
1953
136,120.50
1954
108,892.04
Total
$ 885,968.56
In the absence of adequate records of the Hospital, we approved respondent's computation of the Hospital's taxable income for the years 1944 through 1947 by use of a net worth method. As part of such computation, we approved respondent's determination that the Hospital's net *54 worth as of January 1, 1944 was $60,000. In decisions entered on January 15, 1962, we decided in the prior case that the following deficiencies and additions to tax were due from the Hospital: INCOME TAX
Addition to Tax
Year
Deficiency
Sec. 291 Sec. 6651(a)
I.R.C. 1939
I.R.C. 1954
1945
$ 5,430.52
$ 1,357.63
1946
26,837.79
6,709.45
1947
26,837.79
6,709.45
1948
22,125.85
5,531.46
1949
14,984.60
3,764.00
1950
30,197.60
7,549.40
1951
54,297.19
13,574.30
1952
42,397.63
10,599.41
1953
91,168.51
22,792.13
1954
51,123.86
$ 12,780.97
DECLARED VALUE EXCESS PROFITS TAX
1944
$ 9,322.60
$ 2,330.65
1945
9,322.60
2,330.65
EXCESS PROFITS TAX
1944
$ 47,344.14
11,836.04
1945
42.900.22
10,725.06 We also decided that there was an overpayment of $33,021.51 in the Hospital's income tax for 1944 and an overpayment of $8,451.75 in the addition to such tax under section 291 of the Internal Revenue Code of 1939. The United States Court of Appeals for the Seventh Circuit affirmed our decisions in the prior case on June 4, 1963. During the years 1955 through 1959, the Hospital continued to make expenditures for improvements to the Rincon property. As set forth more fully below, the Hospital recorded these expenditures on its books and records as appropriations *55 for the so-called Rincon Sanitarium. No sanitarium or other activity of the Hospital was ever operated on the Rincon property during the years 1955 through 1959. Throughout those years, Altar was the owner of the Rincon property, and the Hospital did not own or lease any interest in such property. During the years 1955 through 1959, the Hospital maintained a complete set of books and records using the accrual method of accounting and the Chart of Accounts for Hospitals recommended by the National Hospital Association. For each of the years 1955 through 1958 and the period from January 1, 1959 through August 15, 1959, Joseph Borenstein & Company (hereinafter referred to as Borenstein), certified public accountants, audited the books and records of the Hospital and prepared income statements, balance sheets, and other financial statements of the Hospital for each such period. These income statements and balance sheets are set forth below: KENNER CHARITABLE HOSPITAL, INC.
GENERAL FUND
STATEMENT OF INCOME AND EXPENSES
YEAR ENDED DECEMBER 31, 1955 OPERATING INCOME:
In Patients
$ 224,161.54
Out Patients
4,212.50
Total Operating Income $ 228,374.04
OPERATING EXPENSES:
Administrative Department
$ 22,509.32
Service Department
Dietary
$ 23,568.66
Laundry
4,088.01
Housekeeping
4,981.60
Engineering
12,687.29 45,325.56
Medical Departments And Professional Services
Medical And Surgical
$ 11,837.31
Nursing Service
35,919.47
Medical Records And Library
178.36
Radiology
7,412.04
Laboratory
8,963.64
Operating Room
12,230.00
Pharmacy
6,680.73
Clinic
133.48
Nurses' Home
123.43 83,478.46
Depreciation
9,188.76
Total Operating Expenses
160,502.10
NET OPERATING INCOME $ 67,871.94
LESS - OTHER EXPENSE AND INCOME:
Other Expense:
Discounts And Allowances
$ 10,679.31
Charity
3,584.90
Loss On Blue Cross Patients
3,901.60
Interest And Loan Charges
8,274.85
Bad Debts
7,867.49 $ 34,308.15
Other Income
8,957.42
25,350.73
NET INCOME BEFORE APPROPRIATION $ 42,521.21
APPROPRIATED INCOME:
Purchase of Equipment
$ 4,030.98
Investment In Rincon Hospital And
Sanitarium
46,451.64
Prior Year Charges For Interest On Loans
37,808.00
88,290.62
NET LOSS TO GENERAL FUND BALANCE
$ 45,769.41
*56 KENNER CHARITABLE HOSPITAL INC.
BALANCE SHEET
DECEMBER 31, 1955
ASSETS GENERAL FUND:
Cash In Bank And On Hand
$ 2,397.70
Accounts Receivable
$ 40,737.52
Less - Allowance For Uncollectible Accounts
2,026.87 38,710.65
Inventories:
Food
$ 152.99
Office Supplies
140.00
Medical And Surgical Supplies
87.62
Linen And Bedding
157.09
Drugs
242.94 780.64
Prepaid Expense
483.71
TOTAL ASSETS - GENERAL FUND
$ 42,372.70
SPECIAL FUND:
Investment In Rincon Hospital And Sanitarium
$ 339,324.86
PLANT FUND:
Land
$ 120,000.00
Building
91,302.00
Furniture, Fixtures and Equipment
96,090.85
TOTAL ASSETS - PLANT FUND
$ 307,293.85
LIABILITIES, RESERVES, AND CAPITAL
GENERAL FUND:
Accounts Payable
$ 3,963.42
Loans Payable
20,460.84
Accrued Expenses
18,454.50
Reserve For Depreciation
64,588.50
General Fund Balance
(65,094.56)
TOTAL LIABILITIES, RESERVES, AND CAPITAL
$ 42,372.70
SPECIAL FUND:
Fund Balance
$ 339,324.86
PLANT FUND:
5% Fund Mortgage Payable
$ 90,000.00
Capital
217,293.85
TOTAL LIABILITIES AND CAPITAL - PLANT FUND
$ 307,293.85
KENNER CHARITABLE HOSPITAL INC.
GENERAL FUND
STATEMENT OF REVENUES AND EXPENDITURES
YEAR ENDED DECEMBER 31, 1956
OPERATING REVENUES:
In Patients
$ 172,036.81
Out Patients
4,107.50 $ 176,144.31
OPERATING EXPENDITURES:
Administrative Department
$ 22,217.44
Service Department:
Dietary
$ 21,299.78
Laundry
2,676.68
Housekeeping
4,508.11
Engineering
14,448.09 42,932.66
Medical Departments and Professional Services:
Medical and Surgical
$ 17,785.45
Nursing Service
32,082.94
Medical Records and Library
183.55
Radiology
4,274.20
Laboratory
3,969.98
Operating Room
9,040.46
Pharmacy
7,191.89
Nurses Home
18.96 74,547.43
Depreciation
9,188.76
Total Operating Expenditures
148,886.29
EXCESS OF OPERATING REVENUE OVER OPERATING EXPENDITURES $ 27,258.02
LESS: OTHER RECEIPTS AND EXPENDITURES:
Other Receipts:
Rent for Quarters
$ 4,787.50
Miscellaneous
26.05 $ 4,813.55
Other Expenditures:
Discounts and Allowances
$ 9,952.77
Charity
334.67
Allowances - Doctors
78.50
Outside Nurses
20.28
Clergy
137.60
Legal Fees
1,656.06
Employees Allowances
2.00
Bad Debts
108.56
12,290.44
7,476.89
EXCESS OF REVENUE OVER EXPENDITURES BEFORE APPROPRIATIONS $ 19,781.13
APPROPRIATIONS:
Purchase of Hospital Equipment
$ 2,331.83
Expenditures - Rincon Sanitarium
27,884.45
Interest on Mortgage
5,400.00
35,616.28
NET DECREASE IN GENERAL FUND BALANCE
$ 15,835.15
*57 KENNER CHARITABLE HOSPITAL INC.
BALANCE SHEET
DECEMBER 31, 1956
ASSETS
GENERAL FUND:
Cash in Bank and On Hand
$ 186.43
Accounts Receivable
$ 42,908.84
Less: Allowance for Uncollectible Accounts
2,135.43 40,773.41
Inventories
2,331.96
Prepaid Expenses
459.45
TOTAL ASSETS - GENERAL FUND
$ 43,751.25
SPECIAL FUND:
Investment in Rincon Sanitarium
$ 367,209.31
PLANT FUND:
Land
$ 120,000.00
Building
91,203.00
Furniture, Fixtures and Equipment
98,422.68
TOTAL ASSETS - PLANT FUND
$ 309,625.68
LIABILITIES, RESERVES AND FUND BALANCES
GENERAL FUND:
Accounts Payable - Trade
$ 2,381.45
Due to Dr. William Kenner
3,628.38
Accrued Expense
23,982.65
Loans Payable
20,911.22
Reserve for Depreciation and Replacements
73,777.26
General Fund Balance
(80,929.71)
TOTAL LIABILITIES, RESERVES AND FUND BALANCE -
GENERAL FUND
$ 43,751.25
SPECIAL FUND:
Fund Balance
$ 367,209.31
PLANT FUND:
5% Fund Mortgage Payable
$ 90,000.00
Plant Fund Balance
219,625.68
TOTAL MORTGAGE AND FUND BALANCE
$ 309,625.68
KENNER CHARITABLE HOSPITAL INC.
GENERAL FUND
STATEMENT OF REVENUES AND EXPENDITURES
YEAR ENDED DECEMBER 31, 1957
OPERATING REVENUES
In Patients
$ 172,032.27
Out Patients
3,779. 6 $ 175,811.93
OPERATING EXPENDITURES:
Administrative Expenses
$ 19,700.43
Service Department
Dietary
$ 20,080.57
Laundry
3,513.78
Housekeeping
3,634.20
Engineering
16,708.63 43,937.18
Medical Departments And Professional Services:
Medical and Surgical
$ 17,806.07
Nursing Service
29,975.20
Medical Records
108.53
Radiology
4,166.70
Laboratory
3,759.33
Operating Room
8,834.24
Pharmacy
9,719.62
Nurses Home
18.96 74,388.70
Depreciation
9,188.76
Total Operating Expenditures
147,215.07
EXCESS OF OPERATING REVENUE OVER OPERATING EXPENDITURES $ 28,596.86
LESS - OTHER RECEIPTS AND EXPENDITURES:
Other Receipts:
Rent for Quarters
$ 4,740.00
Miscellaneous Income
250.62 $ 4,990.62
Other Expenditures - Discounts and Allowances
$ 8,068.65
Charity
2,907.75
Allowance - Doctors
45.00
Employees Allowances
10.00
Blood Donors
207.50
11,238.90
6,248.28
EXCESS OF REVENUES OVER EXPENDITURES BEFORE APPROPRIATIONS $ 22,348.58
APPROPRIATIONS:
Purchase of New Equipment
$ 1,938.44
Expenditures - Rincon Sanitarium
19,071.77
Interest On Mortgage
5,400.00
26,410.21
NET DECREASE IN GENERAL FUND
BALANCE
(4,061.63)
*58 KENNER CHARITABLE HOSPITAL INC.
BALANCE SHEET
DECEMBER 31, 1957
GENERAL FUND:
Cash in Bank and on Hand
$ 3,347.63
Accounts Receivable
$ 37,478.71
Less - Allowance for Uncollectible Accounts
2,135.43 35,343.28
Inventories
1,062.37
Prepaid Expenses
469.29
TOTAL ASSETS - GENERAL FUND
$ 40,222.57
SPECIAL FUND:
Investment in Rincon Sanitarium
$ 386.281.08
PLANT FUND:
Land
$ 120,000.00
Building
91,203.00
Furniture, Fixtures & Equipment
100,361.12
TOTAL ASSETS - PLANT FUND
$ 311,564.12
LIABILITIES, RESERVES, AND FUND BALANCE:
GENERAL FUND:
Accounts Payable - Trade
$ 556.39
Due to Dr. William Kenner
4,400.00
Accrued Expenses
18,756.20
Loans Payable
18,535.30
Reserve for Depreciation & Replacements
82,966.02
General Fund Balance
(84,991.34)
TOTAL LIABILITIES, RESERVES & FUND BALANCE
$ 40,222.57
SPECIAL FUND FUND BALANCE:
$ 386,281.08
PLANT FUND:
5% Fund Mortgage Payable
$ 90,000.00
Plant Fund Balance
221,564.08
TOTAL MORTGAGE AND FUND BALANCE:
$ 311,564.12
KENNER CHARITABLE HOSPITAL, INC.
GENERAL FUND
STATEMENT OF REVENUES AND EXPENDITURES
YEAR ENDED DECEMBER 31, 1958
OPERATING REVENUES:
In Patients
$ 181,290.82
Out Patients
2,581.50 $ 183,872.32
OPERATING EXPENDITURES:
Administrative Department
$ 31,713.27
Service Department
Dietary
$ 19,585.11
Laundry
2,479.47
Housekeeping
7,178.54
Engineering
16,085.17 45,328.29
Medical Departments and Professional Services
Medical and Surgical
$ 18,371.99
Nursing Service
32,979.44
Medical Records and Library
147.75
Radiology
4,480.54
Laboratory
3,301.27
Operating Room
5,885.02
Pharmacy
7,253.37
Nurses Home
18.96 72,438.34
Depreciation
9,188.74
Total Operating Expenditures
158,668.64
EXCESS OF OPERATING REVENUE OVER OPERATING EXPENDITURES
$ 25,203.68
LESS OTHER RECEIPTS AND EXPENDITURES
Other Receipts:
Rent for Quarters
$ 4,350.00
Miscellaneous Income
1,336.90 $ 5,686.90
Other Expenditures:
Discounts and Allowances
$ 7,260.14
Charity
701.36
Employees' Allowances
104.00
Blood Donors
150.00
Legal Fees to Collect Accounts
414.66
$ 8,630.16
( 2,943.26)
EXCESS OF REVENUE OVER EXPENDITURES BEFORE APPROPRIATIONS $ 22,260.42
APPROPRIATIONS:
Prior Years Adjustments - Internal
$ 5,818.14
Purchases of New Equipment
1,108.46
Expenditures - Rincon Sanitarium
52,978.26
Prior Years Adjustment - Salaries
1,023.42
Interest on Mortgages
6,712.50
$ 67,640.78
NET DECREASE IN GENERAL FUND BALANCE
$ 45,380.36
*59 INC.
BALANCE SHEET
DECEMBER 31, 1958
GENERAL FUND:
Cash in Bank and On Hand
$ 357.36
Accounts Receivable
$42,169.90
Less - Allowance for Uncollectible Accounts
2,135.43 40,034.47
Inventories
1,577.55
Advances to Employees
100.00
Prepaid Insurance
180.33
TOTAL ASSETS, GENERAL FUND
$ 42,249.71
SPECIAL FUND:
Investment in Rincon Sanitarium
$ 434,368.09
PLANT FUND:
Land
$ 120,000.00
Building
91,203.00
Furniture, Fixtures & Equipment
101,469.59
TOTAL ASSETS - PLANT FUND
$ 312,672.58
LIABILITIES, RESERVES, AND FUND BALANCE:
GENERAL FUND:
Accounts Payable - Trade
$ 4,313.40
Due to Dr. William Kenner
10,619.57
Loans Payable
11,784.40
Accruals:
Internal
$ 17,770.50
Payroll Taxes
949.23 18,719.78
Hospitalization Insurance Withheld from
29.40
Employees
Reserve for Depreciation & Replacements
92,154.78
General Fund Balance
(95,371.72)
TOTAL LIABILITIES, RESERVES & FUND BALANCE:
$ 42,249.71
SPECIAL FUND BALANCE:
Fund Balance
$ 434,368.09
PLANT FUND:
MORTGAGE AND FUND BALANCE:
5% Fund Mortgage Payable
$ 125,000.00
Plant Fund Balance
187,672.58
TOTAL MORTGAGE AND FUND BALANCE:
$ 312,672.58
KENNER'S CHARITABLE HOSPITAL, INC.
STATEMENT OF REVENUES AND EXPENDITURES
GENERAL FUND
JANUARY 1, 1959 TO AUGUST 15, 1959
OPERATING REVENUES
In Patients
$ 90,458.51
Out Patients
1,969.50 $ 92,428.01
OPERATING EXPENDITURES
Administrative Expenses
$ 20,798.43
Service Department
Dietary
$ 10,903.67
Laundry
1,173.59
Housekeeping
4,348.06
Engineering
7,617.78 24,043.10
Medical Department & Professional Services
Medical & Surgical
$ 12,499.78
Nursing Services
21,453.95
Medical Records
18.00
Radiology
3,110.99
Laboratory
1,866.85
Operating Room
122.29
Pharmacy
4,118.13
Nurses' Home
11.85 43,201.84
Depreciation
5,742.98
TOTAL OPERATING EXPENDITURES
93,786.35
EXCESS OF OPERATING EXPENSES OVER OPERATING REVENUES ($ 1,358.34)
LESS - OTHER RECEIPTS AND EXPENDITURES
Other Receipts:
Meals
$ 19.95
Alcohol
39.96
Discounts Earned
8.10
Rent
2,737.50
Miscellaneous
263.80
Telephone
71.61
Sale of Equipment
1,195.00 $ 4,335.92
Other Expenditures:
Discounts & Allowances
$ 3,311.86
Charity
3,178.60
Old Age Allowances
2,399.29
Employees' Allowances
166.20
Blood Donors
389.38
Legal Fees on Collections
604.17
Bad Debts
12,130.19
22,179.69
( 17,843.77)
EXCESS OF EXPENDITURES OVER REVENUES ($ 19,202.11)
APPROPRIATIONS:
For Rincon Sanitorium
$ 13,654.03
Interest on Mortgage
4,687.50
Less - Prior Year's Adjustment
(150.07)
18,191.46
NET DECREASE - GENERAL FUND BALANCE
($ 37,393.57)
*60 KENNER'S CHARITABLE HOSPITAL, INC.
BALANCE SHEET
AUGUST 15, 1959
GENERAL FUND
ASSETS
Cash in Bank and On Hand
$ 1,293.79
Accounts Receivable
$ 34,689.80
Less - Allowance for Uncollectible Accounts
14,165.62 20,524.18
Inventories
648.18
TOTAL ASSETS - GENERAL FUND
$ 22,466.15
SPECIAL FUND
INVESTMENT IN RINCON SANITORIUM
$ 448,022.12
PLANT FUND
FIXED ASSETS:
Land
$ 120,000.00
Building
91,207.00
Furniture, Fixtures & Equipment
98,040.58
TOTAL FIXED ASSETS - PLANT FUND
$ 309,247.58
LIABILITIES, RESERVES, and FUND BALANCES:
Accounts Payable
$ 7,594.74
Due to Dr. William Kenner
18,169.57
Loans Payable
12,391.31
Accrued Interest Payable
18,708.00
Credit Balances - Accounts Receivable
470.06
Reserve for Depreciation and Replacement
94,472.76
Fund Balance
( 129,340.29)
TOTAL LIABILITIES, RESERVES, and FUND BALANCE - GENERAL FUND
$ 22,466.15
FUND BALANCE
$ 448,022.12
MORTGAGE AND FUND BALANCE:
5% First Mortgage Payable
$ 125,000.00
Plant Fund Balance
184,247.58
TOTAL MORTGAGE & FUND BALANCE - PLANT FUND
$ 309,247.58
The following table consolidates the data appearing in statements titled "Statement of General Fund Appropriations for Rincon Sanitarium Special Fund," wich were prepared by Borenstein for each of the years 1955 through 1958 and the *61 period from January 1, 1959 through August 15, 1959: KENNER CHARITABLE HOSPITAL, INC.
STATEMENT OF GENERAL FUND APPROPRIATIONS
FOR RINCON SANITARIUM SPECIAL FUND
1955
1956
1957
1958
1959 Land Improvements
$ 1,505.00
$ 1,974.97
Purchases-New Equipment
5,389.84
$ 2,054.59
5,266.12
$ 256.55
Building of Commissary
21,854.17
Extra Ordinary Repairs
1,547.18
Installation of Pipelines
3,611.28
Overhead Salaries
3,487.50
2,642.36
$ 3,563.47
Travel
590.34
753.36
1,056.93
Heat, Light, and Power
675.11
77.99
367.84
970.62
669.73
Meter Service
2,317.33
887.38
1,150.24
3,323.46
Maintenance & Electrical Supplies
158.57
546.73
General Repairs
912.97
863.08
1,576.68
Ground Maintenance
107.45
109.42
Laundry
7.65
108.60
Taxes-Property
295.16
Telephone
224.95
198.37
257.47
1,732.24
Building Improvements
3,767.14
21,160.68
24,759.29
Water
99.25
Remodeling
11,281.61
Food
21.85
1,760.90
300.00
Labor
7,902.96
1,728.68
Ground Repairs
754.31
Ice Plant
665.15
Carpentry Supplies
85.41
Office
1.40
Plumbing
5.62
Paint Supplies
18.42
Housekeeping
39.16
Fence
89.94
Building of Storage
Rooms
1,062.24
Motor Service
398.57
General Expense
608.72
Well Construction
9,691.78
Less: Appropriation
Accrued But Unpaid
(4,891.25)
Total
46,451.64
27,884.45
$ 19,071.77
$ 48,087.01
$ 13,654.03 During the years in issue, the Hospital *62 followed an accounting practice of billing each patient for the full price of the room, board, and services which it provided, regardless of whether the Hospital intended to collect the full amount of the bill from the particular patient. Accordingly, the Hospital would debit its accounts receivable for the full price of the services and credit income from patients in a like amount. However, the Hospital customarily granted discounts and allowances from the full price for various classes of patients, viz., doctors, nurses, clergy, blood donors, the aged, employees of the Hospital, and so-called "charity" and "part-pay" patients. The Hospital accounted for these various discounts and allowances by debiting the appropriate discount and allowance account and crediting in like amount the account of the particular patient to whom the discount or allowance was granted. In accordance with the accounting practice just described, the income statements of the Hospital for the years 1955 through 1958 and the period from January 1, 1959 through August 15, 1959 include as income from patients the full amount of the Hospital's billings and likewise include as "other expenses" the amounts of the *63 various discounts and allowances which it granted to its patients. The income statement of the Hospital for 1955 includes as an expense the item "Loss on Blue Cross Patients." This item arose when Blue Cross, a medical insurance carrier, refused to pay the Hospital the full amount which the Hospital billed a patient insured by Blue Cross, because Blue Cross denied liability under its policy with the patient or for some other reason. In preparing the financial statements of the Hospital for the years 1955 through 1958, Borenstein charged off specific accounts receivable of the Hospital deemed to be uncollectible and increased the Hospital's reserve for doubtful accounts by 5 percent of the remaining year-end accounts receivable balance. For the financial statements of the Hospital's final period of operations from January 1, 1959 through August 15, 1959, Borenstein charged off specific accounts receivable of the Hospital deemed to be uncollectible and increased the reserve for doubtful accounts by 75 percent of the accounts receivable which the hospital has assigned for collection and 50 percent of the remaining accounts receivable of the Hospital which were due from discharged patients. *64 The Hospital continued to operate at its 3150 Lake Shore Drive premises until about August 15, 1959, and such property was sold later that year for the amount of $ 450,000. The amount of $ 102,648.78, which amount represents a portion of the proceeds from the sale of the 3150 Lake shore Drive premises, was transferred on October 8, 1959 from the Hospital's account at a Chicago bank to the personal account of Kenner at the same bank. Also, on November 16 and 19, 1959, the respective amounts of $ 10,000 and $ 1,500 were transferred from the Hospital's account at a Tucson bank to Kenner. The sale of the Hospital's premises at 3150 Lake Shore Drive was authorized by a resolution of its board of directors dated June 30, 1959. By the close of 1959, the Hospital had not distributed or otherwise disposed of its Hill House property. During the years in issue, Kenner used the Hospital's facilities in connection with his private medical practice. He had no other office for seeing and treating his private patients. Kenner did not make any payments to the Hospital for such use of its facilities. The Hospital also allowed the other physicians on its staff the free use of its facilities to *65 attend their private patients. The other staff physicians of the Hospital, however, made less use of the Hospital's facilities because, unlike Kenner, they all had their own private offices at which they carried on their medical practices. During the years in issue, the following checks were drawn on the Hospital's bank account to the order of Kenner (except for check #1630 drawn to currency): Date
Check No.
Amount
1955
3/27
1327
$ 900.00
4/2
1340
6,000.00
5/2
1420
10,000.00
5/19
1439
12,548.57
7/18
1579
927.55
7/30
1630
1,500.00
$ 31,876.12
1956
2/5
2100
$ 500.00
2/9
2104
4,000.00
3/9
2152
9,440.55
3/13
2153
1,500.00
3/15
2158
2,500.00
11/25
2627
370.00
$ 18,310.55
1957
1/1
2693
$ 228.38
8/27
3193
322.50
9/1
3205
2,500.00
9/24
3258
1,000.00
$ 4,050.88
1958
5/14
3794
$ 6,900.00
10/16
4078
3,500.00
$ 10,400.00
1959
9/1
4630
$ 1,000.00
The last five checks listed above were payments by the Hospital of accrued salary it owed to Kenner. Kenner reported the amount of such checks on his Federal income tax returns for the years involved as part of his compensation from the Hospital during each such year. The Hospital followed the practice of billing its patients for the combined charges of its own services and those of Kenner whenever he was the attending *66 physician. When the Hospital received payment from the patient, it would remit to Kenner his share of the fee for services as the attending physician. Check # 3193, listed above, is an example of such a remittance by the Hospital to Kenner for his individual services to a patient of the Hospital. One of the accounts appearing in the Hospital's journal and ledgers was an account no. 102, "Due to (or From) William H. Kenner, M.D." A credit balance in this account was meant to indicate a liability of the Hospital to Kenner. Account no. 102 had the following ending credit balances as of the dates indicated: Date
Credit Balance 12/31/54
$ - 0 -
12/31/55
11,049.38
12/31/56
3,628.38
12/31/56
4,400.00
12/31/58
10,619.57
8/15/59
18.169.57
A credit would arise in this account for one of the following reasons: (1) when Kenner advanced money to the Hospital or made expenditures for the improvement of the Rincon property; (2) when the Hospital accrued unpaid salary due to Kenner; and (3) when the Hospital received a payment from a patient allocable in part to the individual services of Kenner as attending physician. The Hospital debited account no. 102 when Kenner made expenditures for the improvement *67 of the Rincon property, when the Hospital paid Kenner accrued salary due to him, and when it remitted to him his share of a patient's payment. There was also an account no. 5, "Cash and Check Exchange". One set of entries in this account, dated May 31, 1955, consists of a debit and credit to Kenner, both in the amount of $ 22,548.57. There is also a journal entry, dated May 31, 1955, reading as follows: [SEE TABLE IN ORIGINAL] Respondent charged Kenner with distributions in the amount of $ 22,548.57, represented by checks # 1420 and 1439. An additional set of entries in account no. 5, dated July 31, 1955, showed a credit of $ 1,536.40 and a debit in the same amount with the notation, "Beezer - $ 1,500 and Franz - $ 36.40." The entries indicate that they represent cash receipts and cash disbursements. Respondent charged Kenner with $ 1,500, the foregoing represented by the Hospital's check # 1630 drawn to currency. A variety of miscellaneous amounts, totalling $ 39,978.81, were expended by the Hospital during the period August 15, 1959 to December 31, 1959. In 1955 Kenner purchased 100 head of cattle from a rancher in Wyoming and transported them to the Lazy-V ranch. Some time *68 during that year, rain washed sprayed leaves into a pond from which the cattle drank. As a result, 37 head of the cattle died. Also during 1955, Kenner sold 92 head of cattle for a gross sales price of $ 3,809.91. On Schedule F, Schedule of Farm Income and Expenses, of his Federal income tax return for 1955, Kenner claimed the following loss: Range cows (Arizona)
Dead and lost
37 head
Sold
92 head
Date acquired: various
Gross sales price
$ 3,809.91
Cost or other basis
8,091.00
Loss
($ 4,281.09)
In his notice of deficiency to the Hospital, respondent determined that the Hospital did not qualify for exemption from taxation under section 501(c) (3) during the years 1955 through 1959. Respondent further determined the Hospital's taxable income for each such year as follows: KENNER'S CHARITABLE HOSPITAL, INC.
INCOME and EXPENSES
1955
1956
1957
Receipts
$ 228,374.04
$ 176,144.31
$ 175,749.93
Other Income
Rent Quarters
8,957.42
4,787.50
4,740.00
Miscellaneous
26.05
4.13
1,306.90
Total Gross Income
237,331.46
180,957.86
$ 180,494.06
Expenses
Administrative
Department
$ 22,509.32
$ 22,217.44
$ 19,917.72
Service Department
Dietary
23,568.66
21,299.78
19,075.79
Laundry 4,088.01
2,676.68
3,513.78
Housekeeping
4,981.60
4,508.11
3,500.54
Engineering-
Plant Operations
12,687.29
14,448.09
16,708.63
TOTAL
$ 45,325.56
$ 42,932.66
$ 42,798.74
Medical Dept.
and Professional
Medical and Surgical
11,837.31
17,785.45
15,674.22
Nursing
35,919.47
32,082.94
28,393.70
Medical Records and
Library
178.36
183.55
108.53
Radiology
7,412.04
4,274.20
4,166.70
Laboratory
8,963.64
3,969.98
2,380.46
Operating Room
12,230.00
9,040.46
8,834.24
Pharmacy
6,680.73
7,191.89
9,658.60
Clinic
133.48
Nurse Home
123.43
18.96
18.96
TOTAL
$ 83,478.46
$ 74,547.43
$ 69,235.41
Depreciation
$ 8,836.83
$ 9,091.37
$ 9,184.63
Total Expenses
160,150.17
148,788.90
$ 141,136.50
Less: Portion
of Expenses
Determined Incurred on
Behalf of William H. Kenner
Administrative
Department
6,000.00
6,000.00
6,000.00
Service Department
1,200.00
1,200.00
1,200.00
Medical Dept.
and Professional:
Nursing
5,000.00
5,000.00
5,000.00
Pharmacy
2,800.00
2,800.00
2,800.00
TOTAL
$ 15,000.00
$ 15,000.00
$ 15,000.00
Balance
145,150.17
133,788.90
$ 126,136.50
Ordinary Income
$ 92,181.29
$ 47,168.96
$ 54,357.56
Long-term Capital Gain
Taxable Income
$ 92,181.29
$ 47,168.96
$ 54,357.56
*69 KENNER'S CHARITABLE HOSPITAL, INC.
INCOME and EXPENSES
1958
1959
Receipts
$ 183,877.32
$ 92,428.01
Other Income
Rent Quarters
4,380.00
2,737.50
Miscellaneous
1,590.42
Total Gross Income
$ 189,564.22
$ 96,763.93
Expenses
Administrative
Department
$ 18,946.60
$ 20,798.43
Service Department
Dietary
19,585.11
10,903.67
Laundry 2,479.47
1,173.59
Housekeeping
7,178.54
4,348.06
Engineering-
Plant Operations
16,085.17
7,617.78
TOTAL
$ 45,328.29
$ 24,043.10
Medical Dept.
and Professional
Medical and Surgical
18,371.99
12,499.78
Nursing
32,979.44
21,453.95
Medical Records and
Library
147.75
18.00
Radiology
4,480.54
3,110.99
Laboratory
3,301.27
1,866.85
Operating Room
5,885.02
122.29
Pharmacy
7,253.37
4,118.13
Clinic
Nurse Home
18.96
11.85
TOTAL
$ 72,438.34
$ 43,201.84
Depreciation
$ 9,184.63
$ 8,732.41
Total Expenses
$ 145,897.86
$ 96,775.78
Less: Portion
of Expenses
Determined Incurred on
Behalf of William H. Kenner
Administrative
Department
6,000.00
4,500.00
Service Department
1,200.00
900.00
Medical Dept.
and Professional:
Nursing
5,000.00
3,750.00
Pharmacy
2,800.00
2,100.00
TOTAL
$ 15,000.00
$ 11,250.00
Balance
$ 130,897.86
$ 85,525.78
Ordinary Income
$ 58,666.36
$ 11,238.15
Long-term Capital Gain
$ 242,352.72
Taxable Income
$ 58,666.36
$ 253,590.87 Respondent based his computation of the Hospital's *70 taxable income on the income statements prepared by Borenstein. The Hospital has assigned as error the following discrepancies between the income statements prepared by Borenstein and respondent's computation of the Hospital's taxable income, should the Hospital not be entitled to exemption from Federal income tax: [6]
(1) Respondent did not allow as a deduction a portion of the administrative, service, and medical and professional service expenses which he determined was incurred on behalf of Kenner's individual medical practice; (2) Respondent did not allow as deductions the entire "other expense" category appearing in each income statement; *71 (3) Respondent did not allow as a deduction $ 12,766.67 of the administrative expenses appearing on the income statement for 1958, which amount seems to be related to the following items detailed in the schedule of administrative expenses appended to the income statement for 1958: Legal and audit
$ 11,266.27
O.A.B. expense
1,553.40
$ 12,819.67
The legal and audit expenses were incurred by the Hospital during 1958 in connection with its prior case in this Court. The O.A.B. expense was social security, or "old age benefit," payroll taxes incurred by the Hospital during 1958; (4) Respondent did not allow as deductions the following items appearing in the "appropriations" section of the income statements: 1955
Prior year charges for Interest on Loans
$ 37,808.00
1956
Interest on Mortgage
$ 5,400.00
1957
Interest on Mortgage
$ 5,400.00
1958
Interest on Mortgage
$ 6,712.50
1959
Interest on Mortgage
$ 4,687.50
(5) Respondent determined that the Hospital must recognize in 1959 a long-term capital gain of $ 242,352.72 on the sale of its 3150 Lake Shore Drive premises on October 7, 1959, computed as follows: Selling price
$ 450,000.00
Less: Commission
23,000.00
Net selling price
$ 427,000.00
Less:
Basis of property
$ 201,884.54
Less:
Depreciation allowed or allowable
17,237.26
184,647.28
Long-term capital gain
$ 242,352.72
Respondent *72 also refused to allow as deductions all of the amounts expended by the Hospital during the period August 15, 1959 to December 31, 1959.
Respondent further determined that the Hospital was liable for additions to tax under section 6651(a) for failure to file Federal income tax returns for the years 1955 through 1959. In his notice of deficiency to Kenner, respondent determined that Kenner's gross income for the years 1955 through 1959 included payments which the Hospital made to him or on his behalf during those years. Adjusted for amounts subsequently conceded by respondent, these amounts are as follows: Year
Payments on behalf
of Kenner in re: Year
Payments to Kenner
Rincon Sanitarium
Total 1955
$ 31,876.12
$ 46,451.64
$ 78,327.76
1956
$ 18,310.55
$ 27,884.45
$ 46,195.00
1957
$ 4,050.88
$ 19,071.77
$ 23,122.65
1958
$ 10,400.00
$ 48,087.01
$ 58,487.01
1959
$ 115,148.78
$ 13,654.08
$ 128,802.86 The "payments to Kenner" consist of the checks which the Hospital drew to the order of Kenner or to currency, in the case of check # 1630 (see p. 26, supra ) plus a portion of the proceeds [7] of the sale of the 3150 Lake Shore Drive premises in 1959 which were transferred to Kenner on October 8, 1959, and November 16, *73 and 19, 1959 [8] (see p. 25, supra ). The "payments on behalf of Kenner in re: Rincon Sanitarium" consist of the amounts appearing in the financial statements prepared by Borenstein as the Hospital's appropriations for the so-called Rincon Sanitarium. Respondent also disallowed (1) capital loss deductions claimed by Kenner for the years 1955 through 1957 in the respective amounts of $ 1,000, $ 1,000, and $ 300; (2) business expense deductions and itemized expense deductions claimed by Kenner as follows: Year
Business Expense
Itemized Expense
deductions disallowed
deductions disallowed 1955
$ 1,345.83
$ --
1956
8,402.82
1,818.35
1957
2,264.71
1,307.59
1958
3,956.30
--
1959
128.36
2,371.08
and (3) Kenner's claimed cattle loss deduction for 1955 in the amount *74 of $ 4,281.09. Respondent further determined that Kenner was liable for the addition to tax under section 6651(a) for failure to file a Federal income tax return for 1958 within the time prescribed by law. Respondent's notice of deficiency to Kenner in regard to his taxable years 1955 through 1958 was dated April 11, 1962. The following amounts of gross income were reported in Kenner's joint Federal income tax returns for the years 1955 through 1957: Year
Gross Income Reported 1955
$ 44,044.87
1956
55,161.29
1957
47,332.96
On his Federal income tax returns for the years in issue, Kenner reported varying amounts of net profit from his individual practice of medicine and salary from the Hospital in the amount of $ 12,000 for each of the years 1955 through 1958 and $ 13,000 for the year 1959. Except for his salary from the Hospital, Kenner's returns for the years 1955 through 1957 did not in any way disclose any payments which the Hospital made to him or on his behalf during those years. OPINION Dr. Kenner and his Hospital are no strangers to this Court. Our findings of fact refer to a prior case involving the Federal income tax liability of the same petitioners for the years 1944 through *75 1954. See footnote 5, supra. The present case, involving many of the same issues for the years 1955 through 1959, itself has a long history. It was commenced over twelve years ago and is now before us on remand from the United States Court of Appeals for the Seventh Circuit. The appellate court remanded for a new trial at which petitioners would have the opportunity of attempting to prove their contentions through testimony and other secondary evidence, in the absence of best evidence such as cancelled checks and original books of account. The lengthy record produced at the second trial differs considerably from the sparse and largely irrelevant record born of the original trial, at which Kenner appeared pro se on behalf of himself and the Hospital. Petitioners' present counsel were able to introduce documentary evidence which was either not offered in evidence or excluded from evidence at the previous trial. Nevertheless, the new record still leaves many essential questions unanswered and several matters will have to be decided on the basis of a failure of proof. Such defects in the record were perhaps unavoidable. Time and protracted litigation have left the books and records *76 of the Hospital incomplete and disordered and have blurred the recollection of witnesses to the events. What should have been avoided, however, was the superficial approach of the parties in their analysis of the evidence that was presented, leaving to the Court the unwelcome task of bringing some degree of order and coherence to an often confusing record. Before proceeding to the disposition of the issues involved herein we note that, except as to the issue of omission of 25 percent or more of gross income in the case of Kenner's individual tax liability (see p. 57, infra ), the burden of proof is on the petitioner. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142, Rules of Practice and Procedure of this Court. Hospital Exemption and Income Respondent contends that the Hospital failed to qualify for exemption from taxation under section 501(c) (3) during the years 1955 through 1959, because it did not satisfy the requirement of that section that "no part of [the organization's] net earnings * * * inures to the benefit of any private shareholder or individual." See also (3)-1 (3)-1 section 1.501(c) (3)-1(d) (1) (ii), Income Tax Regs. Respondent argues that the Hospital violated *77 this inurement test in three respects during the years in issue: (1) it made distributions to Kenner - namely, the checks which it drew to his order (or to currency, in the case of one check) and a portion of the proceeds of the sale of the 3150 Lake Shore Drive premises which were transferred to Kenner; (2) it made expenditures for the improvement of property owned by Altar, Kenner's wholly-owned corporation; and (3) it permitted the free use of its facilities and paid certain operating expenses for the benefit of Kenner's individual medical practice. See Rev. Rul. 56-185, 1956-1 C.B. 202, 203 (use of hospital facilities to serve private interests). We hold that during each of the years in issue the Hospital made distributions of its earnings to Kenner or for his benefit, including direct payments and the amounts the Hospital expended for the improvement of the Rincon property. We further hold that the Hospital made its facilities available to Kenner without charge (to an extent exceeding any customary availability of hospital facilities to staff physicians) and paid certain operating expenses of Kenner's individual medical practice. It follows from each of these holdings that the *78 Hospital has failed to satisfy the requirement that no part of its earnings inure to the benefit of any private individual and is therefore not entitled to exemption from tax. Kenner v. Commissioner, 318 F.2d 632, 634 (C.A. 7, 1963), affirming T.C. Memo 1961-37. Consequently, we must proceed to determine the taxable income of the Hospital for each of the years in issue. It is apparent that respondent based his computation of the Hospital's taxable income on the income statements prepared by Joseph Borenstein & Company (Borenstein), the Hospital's independent accountant, for the years 1955 through 1958 and the Hospital's final period of operations from January 1, 1959 through August 15, 1959. The dispute between the Hospital and the respondent centers on certain expense items appearing in the Borenstein statements which the respondent did not allow as deductions in computing the Hospital's taxable income. As mentioned above, time and protracted litigation have left the books and records of the Hospital incomplete and disordered. However, Kenneth Price, an experienced C.P.A. and partner of the Borenstein firm who audited the Hospital's books and records and prepared the financial *79 statements of the Hospital, testified convincingly at both the first and second trials of this case that the Hospital's accounting records were adequately maintained during the years in issue. Our own examination of the Hospital accounting records which were introduced into evidence confirms this testimony. In short, we are satisfied that the Borenstein statements should be regarded as reliable summaries of the underlying records, as to the amounts involved and as to the characterization of items for bookkeeping purposes. We emphasize, however, that we speak of reliability in the bookkeeping sense only, and not necessarily in the tax sense, particularly in matters requiring us to identify expenditures of the Hospital made for Kenner's individual benefit. The first discrepancy between the Borenstein income statements and respondent's computation of the Hospital's taxable income is respondent's disallowance as a deduction of a portion of the Hospital's "administrative", "service", and "medical and professional" expenses appearing in the income statements for each of the years in issue. [9] Respondent denies the deductibility of such amounts on the grounds that they were incurred on *80 behalf of Kenner's individual medical practice and not for the benefit of the Hospital itself. [10] The record before us amply supports the respondent's determination in this respect. Kenner carried on his private medical practice exclusively on the Hospital's premises and with the use of the Hospital's equipment and staff. Price testified at the first trial of this case that no allocation was made as between those administrative, service, and medical and professional expenses which the Hospital incurred to carry on its own operations *81 and those which it incurred for the benefit of Kenner's individual medical practice. Kenner himself did not offer any testimony regarding the expenses in question. We also learn from the record that the Hospital billed and collected payments from patients for the individual services of Kenner as well as for its own services, all without cost to Kenner. Petitioners argue that it is customary hospital practice to allow staff physicians the free use of hospital facilities to see their private patients. Former employees of the Hospital with experience working at other hospitals testified to this effect when called as witnesses on behalf of the petitioners. Insofar as the present record reveals, however, such so-called staff privileges are limited to incidental use of the hospital facilities in furtherance of the hospital's treatment of its own patients. The Hospital iteself extended such staff privileges to the other members of its medical staff besides Kenner. Whatever the customary practice in this regard may be or whatever tax consequences may ensue therefrom (issues which we need not now decide), we do not think that the sizable amounts of out-of-pocket expenses which the Hospital *82 incurred for the exclusive benefit of Kenner's private medical practice are comparable. The Hospital argues next that any expenses which it incurred for the benefit of Kenner's individual medical practice should be regarded as additional deductible compensation which it paid him to supplement an otherwise inadequate salary of $ 12,000 for each of the years 1955 through 1958 and $ 13,000 for 1959. Payments are deductible as compensation, however, only if they are made with intent to compensate for services rendered. Paula Construction Co., 58 T.C. 1055, 1058-1059 (1972), affirmed without opinion 474 F.2d 1345 (C.A. 5, 1973); Klamath Medical Service Bureau, 29 T.C. 339, 347 (1957), affd. 261 F.2d 842, 847 (C.A. 9, 1958). While the record clearly shows that Kenner performed valuable and substantial services for the Hospital, there is no indication that the Hospital intended the amounts in question as additional compensation for the services he performed. Only the salary which Kenner reported on his returns for the years in issue was treated on the books and records of the Hospital as compensation for his services. We hold that respondent properly disallowed as deductions the amounts *83 of administrative, service, and medical and professional expenses which he determined were incurred on behalf of Kenner's private medical practice. The next discrepancy between respondent's computation of the Hospital's taxable income and the Borenstein income statements for each of the years in issue is respondent's refusal to allow as deductions the entire category of "other expenses" appearing in such income statements. The specific items involved are the various discount and allowance items discussed in our findings of fact (see p. 23, supra ), "Loss of Blue Cross Patients," "Bad Debts, " legal fees, and "Interest and Loan Charges." We have found as a fact that the discount and allowance items were price reductions which the Hospital routinely granted to various classes of its patients. The Hospital recorded in its books of account the full price of its services to all patients, and these are the amounts which appear in the Borenstein income statements as the Hospital's total income from patients. Because of the discounts and allowances it granted, however, the Hospital never intended to collect the full price of its services to all patients. We are staisfied that such discounts *84 and allowances were in fact made and accordingly we hold that the proper treatment of these items is to subtract them from the Hospital's total patient billings in order to arrive at the Hospital's gross income. See Allen Schiffman, 47 T.C. 537, 541 (1967); Tri-State Beverage Distributors, Inc., 27 T.C. 1026, 1029-1031 (1957); Albert C. Becken, Jr., 5 T.C. 498, 505 (1945); American Lace Mfg. Co., 8 B.T.A. 419 (1927). The Borenstein statements for 1955 indicate that a bad debt reserve was established in an amount equal to 5 percent of the Hospital's accounts receivable and that a bad debt expense of $ 7,867.49 was deducted in determining the Hospital's net income. The reserve was continued in the years 1956 through 1959; $ 108.56 was added to the reserve in 1956 and $ 12,130.19 in 1959 with corresponding amounts deducted from gross income in those years.
As far as any deduction for a bad debt reserve is concerned, Section 166(c) permits a deduction for a reasonable addition to a reserve for bad debts "in the discretion of the Secretary or his delegate" and Section 1.166-1(b), Income Tax Regs., provides that a taxpayer in filing his return "for the first taxable year for which he is *85 entitled to a bad debt deduction may select either of the two methods prescribed by paragraph (a) of this section for treating bad debts [deduction for specific worthless debts or a reserve], but such selection is subject to the approval of the district director upon examination of his return." It is obvious that the Hospital corporation has not met these requirements. It has not filed any returns and respondent's action by way of the deficiency notice herein not only does not constitute approval but in fact is a disapproval of the reserve method. The respondent's range of discretion in this area is practically absolute. Silvio Gutierrez, 53 T.C. 394, 400 (1969), affirmed per curiam, [*] F.2d [*] ( C.A.D.C., 1971, 29 A.F.T.R. 2d 72-358, 72-1U.S.T.C. par. 9121). Under the circumstances, any deduction for a reserve for bad debts cannot be sustained. Nor can we sustain any deductions by way of a charge off of specific bad debts in 1955 or 1959. There is simply no evidence in the record herein which shows that any particular accounts receivable were in fact uncollectible at the end of either of these years or, for that matter, at the end of any other year involved herein. The Borenstein *86 income statement for 1955 includes among the category of "other expenses" an item titled "Loss on Blue Cross Patients." This item arose when Blue Cross, a medical insurance carrier, refused to pay the Hospital the full amount which the Hospital billed a patient insured by Blue Cross, because Blue Cross denied liability under its policy with the patient or for some other reason. The item would be allowable only as a bad debt deduction. In the case of the accounts in question, there has been no showing that the Hospital made any effort to collect the accounts from the individual patients, after Blue Cross denied liability, or that they were in fact uncollectible. Accordingly, the "Loss on Blue Cross Patients" is not an allowable deduction. The Borenstein income statements also include in the category of other expense "legal fees" in the amount of $ 1,656.06 for 1956, "legal fees to collect accounts" in the amount of $ 414.66 for 1958, and "legal fees on collection" in the amount of $ 604.17 for 1959. We think the Hospital has sustained its burden of proving these amounts to be deductible business expenses of the years involved. The other expense category for 1955 includes an amount *87 of $ 8,274.85 for "Interest and Loan Charges". The record contains no evidence explaining the obligations on which such interest and loan charges accrued or whether, for example, any such obligations were incurred for the individual benefit of Kenner rather than for the Hospital's own benefit. [11] Under such circumstances, the Hospital has failed to sustain its burden of proving the deductibility of the amount in question. Another discrepancy between the Borenstein income statements and respondent's computation of the Hospital's taxable income is respondent's refusal to allow as a deduction $ 12,766.67 of the administrative expenses appearing on the income statement for 1958. The Hospital has taken the position in its pleadings, at trial, and on brief that such amount is related to the following items detailed in the schedule of administrative *88 expenses contained in the Borenstein audit report for 1958: Legal and audit
$ 11,266.27
O.A.B. Expense
1,553.40
$ 12,819.67
Although the above two items do not exactly coincide with the amount of the disallowance ($ 12,766.67), we will treat them as the actual items in issue, in the absence of any itemization by the respondent of the amounts of administrative expense he disallowed for 1958 and in the absence of any objection on his part that these were not in fact the items he disallowed. Our findings indicate that the "legal and audit" expense and "O.A.B. Expense" were allowable deductions of the Hospital for 1958 and we so hold. The next variance between the Borenstein income statements and respondent's computation is respondent's refusal to allow as deductions the items contained in the "appropriations" category of the income statements and labelled "Prior Year Charges for Interest on Loans" for 1955 and "Interest on Mortgages" for each of the years 1956 through 1959. The first item is clearly not an allowable deduction of the Hospital for 1955 because its very name indicates that it was not an expense accrued during that year. The second item is also not an allowable deduction for *89 the years in question because the Hospital has failed to prove that any mortgage encumbered its property during those years or, if it did, that such mortgage was not incurred for the personal benefit of Kenner rather than for the Hospital's own benefit.See footnote 11, supra. Respondent determined that the Hospital must recognize a long-term capital gain of $ 242,352.72 on the sale of its 3150 Lake Shore Drive premises during 1959, computed as set forth in our findings of fact.The Hospital argues that it is entitled to the benefit of the nonrecognition provisions of section 337. The record herein leaves no doubt that the Hospital failed to satisfy the requirements of section 337. First, the Hospital did not adopt a plan of complete liquidation during 1959. The Hospital argues that it did adopt such a plan consisting of a resolution of its board of directors on June 30, 1959 authorizing the corporation to sell its premises at 3150 Lake Shore Drive and another purported resolution of its board of directors on August 24, 1959 authorizing the corporation to sell or otherwise dispose of its personal property. We have serious doubts as to the authenticity of the writing purporting to *90 be the resolution of August 24, 1959. Unlike the former resolution, the latter fails to state that it was an action of the corporation's board of directors and only three of the five directors signed the writing in question. Even if the writing is authentic, however, the combination of the two resolutions still does not constitute a plan of complete liquidation. They simply represent authorization for the corporation to sell certain of its assets, without any reference to any intention of liquidating the corporation after the sales were transacted. Secondly, the record herein contains no indication that the Hospital ever sold or otherwise disposed of the Hill House property which it owned. [12] Nor does it contain any indication that the entire proceeds of the sale of the Lake Shore Drive property were distributed. See footnote 7, supra. Consequently, the Hospital corporation failed to meet the requirements of section 337 that "within the 12-month period beginning on the date of the adoption" of the plan of complete liquidation, "all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims * * *." For the foregoing reasons, the *91 Hospital is not entitled to nonrecognition under section 337 and the respondent's determination regarding the 3150 Lake Shore Drive premises is sustained. The Hospital argues that it is entitled to additional deductions for each of the years in issue for interest accruing on the deficiencies determined in the prior case involving the Federal income tax liability of Kenner and the Hospital for the years 1944 through 1954. See section 6601(a). During the years in issue, the Hospital was still contesting its liability for those deficiencies. The contest was not finally resolved until June 4, 1963, when the Seventh Circuit affirmed the decisions of this Court. The Hospital is therefore not entitled to the deductions it claims, because interest on a tax deficiency accrues and is deductible by an accrual-basis taxpayer only when the liability for the deficiency is finally determined. Emanuel N. (Manny) Kolkey, 27 T.C. 37, 65 (1956), affirmed on other issues, 254 F.2d 51 (C.A. 7, 1958); H.E. Harman Coal Corporation, 16 T.C. 787, 806-807 (1951), modified in regard to *92 other issues, 200 F.2d 415 (C.A. 4, 1952); Section 1.461-1(a) (3) (ii), Income Tax Regs.; Rev. Rul. 70-560, 1970-2 C.B. 37. Finally, the Hospital claims a number of additional deductions for 1959 totalling $ 39,978.81. It has introduced a schedule of expenses it paid by check subsequent to August 15, 1959, the closing date of the Borenstein audit for 1959, which were therefore not reflected in the income Statement prepared by Borenstein for 1959. Except for certain items in the schedule which, for aught that appears, were payments of items already accrued in the Borenstein income statement for 1959, [13] *93 we believe that all of the expenses listed in the schedule were properly accruable in 1959, although subsequent to August 15, and are allowable as additional deductions of the Hospital for 1959 in the amount of $ 20,137.50. The Hospital also claims an additional bad debt deduction for $ 20,054.12 of its accounts receivable which it asserts were uncollectible at the close of 1959. There is no evidence in the record that the Hospital ever attempted to collect the amounts in question or, indeed, that it never did collect on such accounts. The deduction therefore cannot be sustained. Similarly, the Hospital's claimed deduction for the abandonment of inventory, furniture, and fixtures must also be denied because of the Hospital's failure to prove that any such abandonment occurred. The parties will reflect the various conclusions which we have reached in regard to the Hospital's taxable income for the years 1955 through 1959 in their computations for entry of decision under Rule 155 of our Rules of Practice and Procedure. Kenner's Taxable Income
Respondent determined that Kenner's gross income for the years 1955 through 1959 included payments which the Hospital made to him or on his behalf during those years, as set forth in our findings of fact. Respondent contends that these payments constitute constructive dividends by way of distributions of the Hospital *94 corporation's earnings and profits. Before proceeding to a resolution of the substantive issue posed by respondent's action, we must first determine whether the years 1955, 1956, and 1957 are barred by the period of limitations. It is clear that the deficiency notice was issued after the normal 3-year period for assessment provided by section 6501(a) had expired. Respondent relies on the 6-year exception to the 3-year period contained in section 6501(e) and, in this regard, he has the burden of proving that Kenner omitted amounts from his gross income which were "properly includable therein" and that such omission was "in excess of 25 percent of the amount of gross income stated in" Kenner's returns for those years. William G. Stratton, 54 T.C. 255, 289 (1970); Gaylord C. Peters, 51 T.C. 226, 230 (1968); C. A. Reis, 1 T.C. 9 (1942). [14]
Kenner can be held to have received income "properly includable" only if the Hospital corporation had accumulated or current earnings and profits during the years in question or if the amounts he received exceeded the basis of his interest in *95 the Hospital. The crucial issue is whether the Hospital had such accumulated or current earnings and profits - an issue to which both parties addressed themselves in a fashion which can at best be described as cursory. We have, however, made our own analysis.
Initially, we note that, in the case of an accrual basis taxpayer, although the amounts of contested tax deficiencies, including additions to tax and interest thereon, are not deductible in computing taxable income until the liability therefor is finally determined (see p. 54, supra), the rule is different in computing accumulated or current earnings and profits. In this latter computation, contested deficiencies are apportioned to and subtracted for each applicable year and interest is subtracted in each year in which it accrues. Additions to tax for failure to file a return, however, are to be subtracted in the year in which the return was to have been filed. Sidney Stark, 29 T.C. 122 (1957); [15] *96 Estate of Esther M. Stein. 25 T.C. 940 (1956), affirmed sub nom. Levine v. Commissioner, 250 F.2d 798 (C.A. 2, 1958); Stern Brothers & Co., 16 T.C. 295, 323 (1951). See James Armour, Inc., 43 T.C. 295, 310 (1964). The following table reveals that as of January 1, 1955, the Hospital Corporation had a substantial deficit in earnings and profits: Hospital's taxable income
for the years 1944 through 1954 [16] *97 $ 885,968.56
Less:
Total deficiencies and additions to tax determined in prior case against the Hospital for the years 1944 through 1954 n16a
$ 580,082.53
Less: Overpayments of income tax and additions to tax for 1944 [17]
41,473.26
$ 538,609.27
Total distributions from the Hospitsl to Kenner during the years 1944 through 1954
treated as distributions of earnings and profits in the prior case [18]
$ 514,051.31
$ 1,052,660.58
Deficit as of 1/1/55 [19]
($ 166,692.02) Since Hospital had no accumulated earnings and profits as of January 1, 1955, we turn now *98 to the question whether it had current or accumulated earnings and profits during any of the years 1955 through 1957. The following table (in which we have assumed the full amounts of taxable income and deficiencies, including additions to tax, determined in the notices of deficiencies, i.e., the picture most favorable to respondent) furnishes the answer:
1955
1956
1957
(1) Hospital's taxable income
$ 92,181.29
$ 47,168.96
$ 54,357.56
(2)(a) Deficiencies in tax
42,434.27
19,027.86
22,765.93
(b) Additions to tax (applied to prior
12,780.97
10,608.57
4,756.97
(taxable year)
(3) One year's interest on net
[20] *99 *100 *101 25,837.10
26,476.16
26.476.16
deficiencies in tax for the years
1944 to 1954 (4) Earnings and profits
11,128.95
(8,943.63)
358.50
[(1) - [(2)(a) + (2)(b) + (3)]]
Gross income reported on Kenner's
44,044.87
55,161.29
47,332.96
returns 25 percent of such gross income
11,011.22
13,790.32
11,833.24
We hold that the years 1955, 1956, and 1957 are barred as to Kenner. Such resolution of the period of limitations issue for 1955, 1956, and 1957 does not relieve us of the obligation to determine the tax character of distributions which respondent asserts were made to or on behalf of Kenner in those years in order to determine whether they should be treated as a return of capital in each of those years chargeable against Kenner's basis in his interest in the Hospital. We are also still left with the question of the taxability of such payments in 1958 and 1959 either as distributions of earnings and profits of the Hospital, if they existed, or as a return of capital.All *102 of the foregoing elements will affect Kenner's tax liability for the latter two years. Since these years are still open under the normal 3-year period of limitations, the burden of proof is on Kenner. See Springfield Street Railway Co. v. United States, 312 F.2d 754, 759 (Ct. Cl. 1963); State Farming Co., 40 T.C. 774, 782-783 (1963). Compare Manhattan Building Co., 27 T.C. 1032 (1957). In regard to the checks which the Hospital drew to Kenner's order (or to currency, in the case of check #1630), Kenner claims that they were nontaxable repayments of the Hospital's debts to Kenner or payments of accrued salary due to Kenner which were reported by Kenner on his Federal income tax returns for the years in issue. We have found that five of the checks in question (Nos. 3205, 3258, 3794, 4078, and 4630) were in fact the Hospital's payments of accrued salary it owed to Kenner and which he reported on his income tax returns for the years in issue. Check #3193 was the Hospital's remittance to Kenner of an amount it collected from a patient for the services of Kenner as attending physician. The record does not disclose whether Kenner reported such amount on his Federal income tax return *103 for 1957 as part of his gross receipts from the private practice of medicine. Because Kenner has the burden of proof on this issue, we must therefore hold that the amount of that check should be treated as a distribution to Kenner. [23] Checks Nos. 2153, 2627, and 2693 are insufficiently explained by the record and should likewise be treated as distributions to Kenner for the years involved. Seven of the remaining checks (Nos. 1327, 1340, 1579, 2100, 2104, 2152, and 2158) are recorded on the Hospital's accounting records as debits to account No. 102, "Due To (or From) William H. Kenner, M.D." We are convinced that Kenner has failed to sustain his burden of proof in this regard. Other than the credit entries in the Hospital's account No. 102 for accrued salary due to Kenner, there is no evidence *104 that a debtor-creditor relationship was intended to be created by any transaction between Kenner and the Hospital.Furthermore, we are unable to determine the extent to which the other credit entries in that account resulted from expenditures which Kenner made for the improvement of the Rincon property, which was owned by Kenner's wholly-owned corporation Altar and had no apparent relation to the Hospital's operations during the years involved herein. We hold that Kenner has failed to sustain his burden of proof in this regard and therefore that these seven checks are to be treated as distributions to Kenner. The remaining checks are Nos. 1420, 1439, and 1630. The first two appear on the books of the Hospital as having been used to pay accrued interest on a building loan from one Gilford. The record herein, however, contains no evidence of any such loan and, for aught that appears, such loan, if it in fact existed, could have been a personal obligation of Kenner. Check No. 1630 is related to one Beezer; for aught that appears in the record, Beezer could have been a patient of Kenner and the Hospital, so that the check might well have involved a transaction comparable to that reflected *105 by Check No. 3193, i.e., a fee from a patient not reported by Kenner on his income tax return for 1955. Here again we must hold that Kenner has failed to sustain his burden of proof and that accordingly the amounts represented by these three checks should be treated as distributions by the Hospital to him. Because Kenner has introduced no evidence regarding the transfer to him of a portion of the proceeds from the sale of the Hospital's 3150 Lake Shore Drive premises in the total amount of $ 114,148.78 during 1958, these amounts should also be treated as distributions to him in that year. Under the circumstances herein, we cannot say that Kenner has proved that the Hospital was in the process of liquidation so that this amount could be treated as a liquidating distribution to him taxable under section 331 or section 346, although a portion of the amount may be treated as return of capital in excess of basis taxable under section 301(c) (3), depending upon the extent of Hospital's earnings and profits available for distribution during that year. As to the payments in respect of Rincon, we have found as a fact that the Hospital did not own or have any interest in the Rincon property, *106 nor did it ever operate a sanitarium or conduct any other activity at that location during the years in issue. The Hospital's expenditures for the improvement of such property therefore inured to the benefit of Altar and should thus be treated as having been distributed to Kenner for the years involved. To complete our analysis, we must note, however, that the payments to or on behalf of Kenner which we have held to be distributions to him will be taxable to him as ordinary income only to the extent that the Hospital had earnings and profits in 1958 and 1959, computed in accordance with the principles enunciated herein. [24] *107 Any excess amounts will first be applied to reduce Kenner's basis (and for this purpose the distributions in 1955, 1956, and 1957 are to be taken into account) and thereafter taxed to Kenner as long-term capital gain. Finally we must deal with the deductions of Kenner which were disallowed for each of the years in issue. Insofar as 1955, 1956, and 1957 are concerned, these deductions do not require our attention, since we have held that those years are barred. With respect to 1958 and 1959, we hold that the evidence herein does not permit a determination that Kenner is entitled to deductions for the items involved in excess of the amounts allowed by the respondent. With respect to Kenner's claim for offsetting deductions to the amounts attributable to the Rincon property which we have held are includable in his income, here again the record is so vague that we must conclude that Kenner has failed to sustain his burden of proof; in this connection, we also note that many, if not all, of the expenditures appear to have involved *108 capital items and would thus not be deductible in any event. Additions to Tax Respondent determined that the Hospital is liable for 25 percent additions to tax pursuant to section 6651(a) for its failure to file any Federal income tax returns for the years in issue. He also determined that Kenner is liable for a 25 percent addition to tax for his failure to file a timely Federal income tax return for 1958. The Hospital argues that it is not liable for additions to tax pursuant to section 6651(a) for its failure to file returns for the years in issue because, in the words of that section, "it is shown that such failure is due to reasonable cause and not due to willful neglect." We disagree that such a showing has been made. The record shows only that during the years in issue the Hospital was still contesting respondent's determination that it was not entitled to tax exemption for the years 1944 through 1954. An honest belief that an organization is entitled to exemption from tax is not in iteself sufficient to excuse a failure to file tax returns. N.Y. State Assn. Real Est. Bd. Group Ins. Fund, 54 T.C. 1325, 1336 (1970); Stevens Bros. Foundation, Inc., 39 T.C. 93, 113 (1962), *109 affd. on this issue 324 F.2d 633, 646 (C.A. 8, 1963); Fraternal Order of Civitans of America, 19 T.C. 240, 244 (1952). The Hospital further argues that it relied on the advice of competent tax counsel not to file tax returns for the years in issue. While we have held that reliance on the advice of competent tax counsel fully informed as to the facts of the case may constitute reasonable cause under section 6651(a) for failure to file a tax return, N.Y. State Assn. Real Est. Bd. Group Ins. Fund, supra, id.; Stevens Bros. Foundation, Inc., supra, 39 T.C. at 133, the Hospital has not brought itself within the application of that doctrine because it has failed to introduce any evidence into the record herein that it did in fact solicit and receive such advice. Kenner seems to advance the same arguments as the Hospital does to justify his failure to file a timely income tax return for 1958. Our response to the Hospital's arguments applies likewise to Kenner. We sustain respondent's determinations of additions to tax pursuant to section 6651(a) as to both petitioners. Decision will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Kenner's Charitable Hospital, Inc., docket No. 2762-62, and William H. Kenner, docket No. 2763-62. Petitioner Eleanor V. Kenner died on September 9, 1965. Pursuant to a joint motion of petitioner William H. Kenner and the respondent filed on October 27, 1972, the Court entered an order on January 26, 1973, dismissing Eleanor V. Kenner as a party to the case for lack of prosecution and withholding decision with respect to her until final disposition of the case. Eleanor V. Kenner's known heirs-at-law and/or next-of-kin were notified of the dismissal and filed no objections thereto.In regard to this procedure, see Harry B. Nordstrom, 50 T.C. 30 (1968). ↩
2. Pursuant to a notice of reassignment sent to counsel for the parties, and to which no objection was filed, this case was reassigned on June 5, 1974 from Judge Graydon G. Withey, who presided at the trial, to Judge Theodore Tannenwald, Jr.↩, for disposition. 3. Unless otherwise stated, statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. ↩
4. Petitioner William H. Kenner did not present any evidence or argument in opposition to respondent's determination of additions to his tax for the years 1956, 1958, and 1959 pursuant to section 6654(a). We therefore consider Kenner to have abandoned this issue. ↩
5. Our findings of fact and opinion herein are based upon the entire record of both trials conducted by Judge Withey. The trial transcript of the prior case (see pp. 7-9, infra ) was received in evidence in this case only insofar as it might pertain to issues of collateral estoppel and res adjudicata, and we have not used it even for those limited purposes let alone for any other purpose. 6. The Hospital has not assigned as error (1) the relatively minor discrepancies between the income items contained in respondent's computations for 1957 and 1958 and the income items appearing in the income statements for those years and (2) the discrepancies between the depreciation allowed by respondent for each of the years involved and the amounts of depreciation appearing in the income statements for each such year. We presume that no assignments of error were made with respect to these discrepancies because they generally favor the Hospital. ↩
7. This amount according to the stipulation of facts was $ 102,648.78, although the net selling price was $ 427,000.00. The record contains no indication of what the net selling price consisted of and, in particular, whether there was additional cash which remained in the Hospital corporation. ↩
8. The amounts transferred on the latter two dates do not appear necessarily to represent part of the proceeds of the sale of the 3150 Lake Shore Drive premises. ↩
9. The Borenstein audit reports for each of the years in issue contain schedules detailing the various items included in each such category of expense. Also, respondent's computation of the Hospital's taxable income details his disallowance of "medical and professional expense" into specific amounts for nursing and pharmacy. See p. 31, supra. ↩
10. We note at this point, that respondent has not made any claim that an equivalent amount should be included in Kenner's income. We also note that, unlike the situation in the prior case, petitioner Hospital seeks herein to deduct these amounts. Compare William H. Kenner, T.C. Memo. 1961-37 (20 T.C.M. at 201). ↩
11. With one minor exception involving the transcript of a bank record dealing with a loan account in the name of Kenner individually, all mortgage and loan documentation in the record deals with years prior to those at issue herein and indeed some of that documentation indicates that whatever obligations existed were paid off in prior years. ↩
12. The Hospital corporation has not suggested that it retained the Hill House property to meet any claims against it. ↩
13. These items include $ 1,500 of salary paid to Kenner ($ 6,000 was apparently already accrued), all but $ 200 of $ 8,691.31 paid to Deloris Barnack as salary ($ 8,491.31 had already been accrued), all but $ 200 of $ 3,700 paid to Alice Yamaoka as salary ($ 3,500 had already been accrued), and $ 7,500 paid to the former C.P.A. of the Hospital for legal and audit expenses ($ 7,745.43 had already been accrued). 14. See also Barth A. Easton, a Memorandum Opinion of this Court dated February 5, 1943 (1 T.C.M. 549↩, 551). 15. We have specifically rejected respondent's request that we reconsider our decision in this case. See Fairmount Park Raceway, Inc., T.C. Memo. 1962-14 (21 T.C.M. 52, 72), affirmed on other issues, 327 F.2d 780↩ (C.A. 7, 1964). 16. There is no evidence that any part of the Hospital corporation's net worth of $ 60,000 as of January 1, 1944 (see 20 T.C.M. at 195) included any accumulated earnings and profits, but, even if we assume that this amount represented accumulated earnings and profits in its entirety, it would not affect our conclusions. We also recognize that taxable income and earnings and profits are not synonomous, but, on the record before us, we can only use the former concept with such adjustments as appear.
16a. Such amount does not include the addition to tax of $ 12,780.97 determined for 1954, which would be deductible only in 1955.↩
17. We have not calculated the applicable accrued interest, since such sum will also not affect our conclusion. ↩
18. See computation which formed basis for decision entered in the prior case. ↩
19. While we recognize that the right to accrue a liability may not exist where the facts indicate it will not be paid, respondent has introduced no evidence from which we can draw any such conclusion herein. We note at this point that part of the deficiencies were paid through a jeopardy assessment in 1959. While it appears that such payments should not affect our calculations in respect of the years 1944 through 1954 for purposes of this case, the fact of the matter is that respondent gave the Hospital credit for such payments in the final computation in the prior case, with the result that such payment is reflected in our analysis. ↩
20. The interest for 1955 includes only 9-1/2 months' interest on the deficiency for 1954, since the Hospital's return and payment for 1954 were not due until March 15, 1955. See Estate of Esther M. Stein, 25 T.C. 940, 965 (1956), affirmed sub nom. Levine v. Commissioner, 250 F.2d 798 (C.A. 2, 1958).We also have not included any interest accruing on the deficiencies and additions to tax determined in the instant proceedings because it would have no effect on the determination of earnings and profits for 1956 and 1957 (both years showing a deficit) and because there is no such interest for 1955.
From the foregoing, it is apparent that in none of the years in question could there have been sufficient distributions to Kenner of earnings and profits to amount to 25 percent of the amount of gross income returned. As to the $ 358.50 of possible earnings and profits for 1957, this amount will clearly be wiped out by the interest on the deficiencies determined herein for 1955 and 1956. We have not included this item in our computation because the precise amount thereof cannot be readily determined until the Rule 155 computation. As to the $ 11,128.95 of potential earnings and profits for 1955, such figure is $ 117.73 "in excess of 25 percent of the amount of gross income stated in the return," However, when one accounts for the deduction of $ 10,679.31 we have allowed the Hospital herein for the discounts and allowances item (see pp. 11 and 46-47, supra) disallowed by respondent, the taxable income, and hence the earnings and profits, will be reduced by an amount far in excess of $ 117.73. (We note that petitioners have not argued that respondent's addition of $ 8,957.42 of "Other Income - Rent Quarters" was improper.)
But the foregoing does not end our inquiry as to the applicability of section 6501(e). We must still determine whether Kenner in any of those years received an amount in excess of the basis of his interest in the Hospital which could be considered gain and therefore includable in gross income. Insofar as the record herein reveals, Kenner's only capital contribution to the Hospital (not including amounts he may have expended for improvements to the Rincon property because Altar and not the Hospital owned the property) was his contribution of the 3150 Lake Shore Drive premises in 1947. His known basis in such property was $ 155,000. Kenner conveyed his Wellington Ave. property, which he had acquired in 1932, to the Hospital in 1946, but we have no means of determining his basis in that property at the time it was conveyed to the Hospital. [21] Again, we will make the assumptions most favorable to respondent and treat all the amounts which respondent claims were distributed to Kenner for tax purposes as having been so distributed. As our findings of fact show, these amounts were $ 78,327.76 in 1955, $ 46,195.00 in 1956, and $ 23,122.65 in 1957. The three amounts aggregate $ 147,645.41 - a total less than the $ 155,000.00 basis. We have not treated any of the distributions to Kenner during 1944 through 1954 as reducing his basis because they were considered as coming from earnings and profits in the prior case. See pp. 7-8, supra. [22]↩ Consequently, Kenner realized no gain in any of those years. 23. It would be possible to treat this item separately and hold that the Hospital was merely a conduit for the collection of a fee which should be treated as ordinary income to Kenner. But respondent has not proceeded to separate out any of the items involved. Rather, he has treated all of them as distributions to Kenner, and, accordingly, we will proceed with our determination on that basis. ↩
24. We note again that in computing earnings and profits of the Hospital for 1958 and 1959 there should be deducted: interest accruing on the deficiencies determined against Hospital for the years 1944 through 1954; interest accruing on the additions to tax for the years 1944 through 1954 from the date when such interest was properly imposed (see section 6601(f)(3); the deficiencies as determined for each of the respective years 1958 and 1959; the addition to tax asserted as to the prior year's deficiency for each of the respective years 1958 and 1959; interest accruing on the deficiencies determined for 1955, 1956, and 9-1/2 months of 1957 with respect to 1958 and all of 1957. and 9-1/2 months of 1958 with respect to 1959.